UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DAVID W. PONG, individually
and as Trustee of the David
W. Pong Revocable Trust,

     Plaintiff,

      v.

AMERICAN CAPITAL HOLDINGS,
INC., BARNARD A. RICHMOND,
RICHARD CRAIG TURNER,
ROBERT LOGEL, and DOES 1
through 25, inclusive

     Defendants.

_____/

NO. CIV. S-06-2527 LKK/DAD

O R D E R

    David W. Pong, plaintiff, brings suit for breach of contract and other claims related to a fraudulent investment scheme. The complaint was originally filed in state court and was removed based on diversity jurisdiction. Pending before the court is a motion to dismiss for improper venue and lack of personal jurisdiction filed by three of the named defendants: American Capital Holding, Inc. ("ACH"); Barnard A. Richmond; and Richard Craig Turner.[1] For the reasons explained herein, the motion to dismiss will be denied

_____

    [1]   A fourth defendant, Robert Logel, did not join in the pending motion.

1  but the motion to transfer will be granted.

2  **I.**

3  **Factual Allegations**

4  Plaintiff, a resident of Sacramento, California, alleges that

5  the named defendants made false representations about investment

6  opportunities.  Based on these representations, plaintiff loaned

7  defendants approximately 1.5 million dollars over the course of

8  several months.  Defendants have failed to repay these loans

9  according to the terms of the promissory notes they made in

10  connection with the loan.  Plaintiff avers that in the fall of 2003

11  defendant Logel represented to plaintiff that Spaulding Ventures

12  LLLC (operated by Logel) was a thriving venture capital fund.

13  Based on these representations, plaintiff purchased membership in

14  Spaulding.  Allegedly, Logel did not inform plaintiff that at the

15  time plaintiff invested with Spaulding, it was in the process of

16  finaling a transaction with American Capital Holdings, Inc.

17  ("ACH"), a merchant-banking corporation and a named defendant in

18  this lawsuit.  Compl. at 2:6-14.  ACH is located in Florida.  The

19  majority of the discussions and dealings concerning the loans took

20  place in Florida and California.

21  In December of 2003, Logel, allegedly acting on behalf of

22  defendants Richmond, Turner and ACL persuaded plaintiff to exchange

23  the Spaulding membership interests he owned for shares of ACH

24  stock.  Logel made several representations about ACH's potential,

25  representations that plaintiff now believes to have been false.

26  Logel told plaintiff that there was absolutely no risk to the

2

1  principal amount of his loan or his investments, as it would be

2  "100% guaranteed." Based on Logel's statements, plaintiff loaned

3  ACH $500,000 and received a promissory note on December 15, 2003.

4  Compl. at 3:6-13. Logel reportedly told plaintiff that he would

5  make "boatloads of money" with the investments with ACH. Pong

6  Decl. in Support of Opp'n to Def.'s Mot. to Dismiss. Plaintiff

7  believed that Logel "was working with the other defendants to

8  solicit loans and investments" from him. Id.

9      In May, 2004, defendant Richmond made representations that

10  ACH's public offering was imminent and that it needed a short term

11  cash infusion. Plaintiff wired $80,711.93 to ACH's account.

12      In June of 2004, defendants again lead plaintiff to believe

13  that ACH would be "going public" shortly and that plaintiff would

14  "reap extremely large returns." Compl. at 4:7. Based on these

15  representations, plaintiff loaned ACH an additional $250,000.00 and

16  received a promissory note on June 4, 2004 to that effect.

17      Finally, in August of 2003, plaintiff was again told that if

18  he loaned ACH additional funds, plaintiff would be "taking steps

19  that would dramatically increase the value of his ACH shares."

20  Compl. at 4:11-13. Plaintiff loaned ACH an additional $400,000.00

21  and a promissory note was executed to that effect on August 23,

22  2004.

23      Both the June and August promissory notes have matured and

24  defendants have failed to repay any of the loans. Plaintiff

25  subsequently filed suit for breach of contract and fraud.

26  Plaintiff also brought claims for rescission and damages under

1  California Corporations Code Section 25501.

2      Plaintiff avers that defendants breached the terms of the June

3  and August promissory notes and that defendants engaged in fraud

4  when making representations to plaintiff about ACH's potential.

5  As a result of the breach of contract and the false

6  representations, plaintiff avers that he has lost $1,730,711.93,

7  plus interest.

8      Both the June and August promissory notes contain the

9  following forum selection clause:

10      "This note . . . shall be construed, governed and enforced in

11  accordance with the laws of the State of Florida with venue being

12  agreed to as Palm Beach County, Florida." <u>See</u> Plf.'s Compl., Ex.

13  2, June 4, 2004 Promissory Note for $250,000.00 & Ex. 3, August 23,

14  2004 Promissory Note for $400,000.00.

15                              **II.**

16                            **Standards**

17      Fed. R. Civ. P. 12(b)(3) governs a motion to dismiss premised

18  on the enforcement of a forum selection clause. <u>Arqueta v. Banco</u>

19  <u>Mexicano, S.A.</u>, 87 F.3d 320, 324 (9th Cir. 1996); see also <u>Offshore</u>

20  <u>Sportswear, Inc. v. Vuarnet Int'l, B.V.</u>, 114 F.3d 848, 851 (9th

21  Cir. 1997) ("We treat dismissal based on a forum selection clause

22  like a dismissal for improper venue under Rule 12(b)(3)").

23      If venue is improper in this district, then the court may

24  transfer the case to any district or division in which it could

25  have been brought if it is in the interests of justice. 28 U.S.C.

26  § 1406(a). Section 1406(a) provides that: "the district court of

1  a district in which is filed a case laying venue in the wrong

2  division or district shall dismiss, or if it be in the interest of

3  justice, transfer such a case to any district or division in which

4  it could have been brought."

5      It is well established that "[o]nce venue is challenged, the

6  burden is on the plaintiff to show that venue is proper." Whiteman

7  v. Resort, 1999 WL 163044, at *1 (N.D.Cal.1999) (citing Piedmont

8  Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th

9  Cir.1979)).

**III.**

**Analysis**

12     Defendants contend that this court lacks personal jurisdiction

13  and, alternately, that the forum selection clauses contained in the

14  promissory notes mandate that venue is proper only in Florida.  As

15  explained below, the court concludes that the forum selection

16  clauses contained in the promissory notes are binding and

17  therefore, venue in the Eastern District of California is improper.

18  Given that this motion may be resolved on the forum selection

19  clause issue alone, the court need not address the question of

20  whether defendants are subject to personal jurisdiction in the

21  Eastern District.

**A.   Whether the Forum Selection Clause Should be Given Effect**

23     Within the Ninth Circuit, federal law governs the validity of

24  a forum selection clause.  Manetti-Farrow, Inc. v. Gucci America,

25  Inc., 858 F.2d 509, 512-13 (9th Cir. 1988).  The Supreme Court has

26  explained that forum selection clauses are prima facie valid and

5

should not be set aside unless the party challenging enforcement of such a provision can show it is " 'unreasonable' under the circumstances." The M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972).

Preliminarily, the court must determine if the forum selection clause is mandatory or permissive. The Ninth Circuit has held that "where venue is specified with mandatory language the clause will be enforced." Docksider, Ltd. v. Sea Technology, Ltd., 875 F.2d 762, 764 (9th Cir. 1989). However, if the language is merely permissive, the forum selection clause will not bar suits from being filed in other venues. Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 77 (9th Cir. 1987).

In short, the court must make three determinations. First, the court must determine whether the forum selection clauses are mandatory or permissive. Second, the court must determine whether enforcement of the clauses would be unreasonable, and third, if the clauses are enforceable, whether the case should be dismissed or transferred. The court addresses each in turn.

**1.   Whether The Clauses Are Mandatory Or Permissive**

As noted, both promissory notes at issue in this case contain the following language:  "This note . . . shall be construed, governed and enforced in accordance with the laws of the State of Florida with venue being agreed to as Palm Beach County, Florida." See Plf.'s Compl., Ex. 2, June 4, 2004 Promissory Note for $250,000.00 & Ex. 3, August 23, 2004 Promissory Note for $400,000.00.  The parties dispute whether this language is

6

1   mandatory or permissive.

2          Several key Ninth Circuit decisions guide the court's

3   analysis. First, in <u>Docksider, Ltd. v. Sea Technology, Ltd.</u>, the

4   court found the following language mandatory:

5                  This agreement shall be deemed to be a contract made
               under the laws of the State of Virginia, United States
6              of America, and for all purposes shall be interpreted in
               its entirety in accordance with the laws of said State.
7              Licensee hereby agrees and consents to the jurisdiction
               of the courts of the State of Virginia. Venue of any
8              action brought hereunder shall be deemed to be in
               Gloucester County, Virginia.
9
<u>Docksider, Ltd.</u>, 875 F.2d at 763. Similarly, in <u>Pelleport</u>
10
<u>Investors, Inc. v. Budco Quality Theatres, Inc.</u>, the court found
11
    mandatory a clause which read:
12
                   Exhibitor [Budco] expressly agrees that any and all
13             disputes arising out of or in connection with this
               Agreement shall be litigated only in the Superior Court
14             for Los Angeles, California (and in no other), and
               Exhibitor hereby consents to the jurisdiction of said
15             court.

16
    <u>Pelleport</u>, 741 F.2d 273, 275 (9th Cir. 1984).
17
           In contrast, in <u>Hunt Wesson</u>, the court determined that the
18
    following clause was permissive:
19
                   Buyer and Seller expressly agree that the laws of the
20             State of California shall govern the validity,
               construction, interpretation*764 and effect of this
21             contract. The courts of California, County of Orange,
               shall have jurisdiction over the parties in any action
22             at law relating to the subject matter of the
               interpretation of this contract.
23
    <u>Hunt Wesson Foods</u>, 817 F.2d at 76.
24
           In comparing the difference between permissive and mandatory
25
    language, the <u>Docksider</u> court remarked that:
26
                                        7

> _Hunt Wesson_ is distinguishable because the forum selection clause underlying this action [_Docksider_] contains the additional sentence stating that '[v]enue of any action brought hereunder shall be deemed to be in . . . Virginia.' This language requires enforcement of the clause because Docksider not only consented to the jurisdiction of the state courts of Virginia, but further agreed by mandatory language that the venue for all actions arising out of the license agreement would be Gloucester County, Virginia. This mandatory language makes clear that venue, the place of suit, lies exclusively in the designated county.

_Docksider_, 875 F.2d at 764. While the line between permissive and mandatory language is uncertain, as a general rule, when venue is specified with mandatory language (such as "shall be"), the clause is enforceable. See _Northern California Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co._, 69 F.3d 1034, 1037 (9th Cir. 1995).

The clauses at issue in this case appear closer to the contract language in _Docksider_ and _Pelleport_ than the clause in _Hunt Wesson_.

Giving words in a contract common or normal meaning is a basic rule of contract interpretation. _Hunt_, 817 F.2d at 77 (citing 4 S. Williston, _A Treatise on the Law of Contracts_, § 618 (W. Jaeger 3d ed.1961)). Here, the words "shall be construed" and "venue being agree to..." clearly indicate that the clauses exclude plaintiff from suing outside of Palm Beach County. Put somewhat differently, an ordinary reading of these words indicates that the language is mandatory and not permissive.

The wording of the forum selection clauses in the case at bar are also similar to other forum selection clauses which were also

found to be mandatory.  <u>See</u> <u>e.g.</u>, <u>Nascone v. Spudnuts, Inc.</u>, 735 F.2d 763, 765 (3d Cir.1 984) ("This franchise shall be construed according to the laws of the State of Utah, and venue for any proceeding relating to the provisions hereof shall be Salt Lake County, State of Utah" construed as mandatory); <u>In re Fireman's Fund Insurance Companies</u>, 588 F.2d 93, 94 (5th Cir. 1979) ("If the Sub-contractor shall institute any suit or action for the enforcement of any of the obligations under this agreement, the venue of such suit or action shall be laid in the County of Essex and State of New Jersey" deemed enforceable); <u>Excell, Inc. v. Sterling Boiler & Mechanical, Inc.</u>, 106 F.3d 318, 320 (10th Cir. 1997) (holding the following words mandatory: "Jurisdiction shall be in the State of Colorado, and venue shall lie in the County of El Paso, Colorado").

Having concluded that the forum section clauses are mandatory, the court turns next to the question of whether enforcing the clauses is reasonable.

**2.   Whether Enforcement of Clauses is Reasonable and Just**

It is well established that a forum selection clause should govern absent strong countervailing factors. <u>M/S Bremen</u>, 407 U.S. at 10.  The Supreme Court has explained that a forum selection clause is unreasonable if (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power, <u>Carnival Cruise Lines, Inc. v. Shute</u>, 499 U.S. 585, 591 (1991) (2) the selected forum is so "gravely difficult and inconvenient" that the complaining party will "for all practical

1  purposes be deprived of its day in court," <u>Bremen</u>, 407 U.S. at 18

2  or (3) enforcement of the clause would contravene a strong public

3  policy of the forum in which the suit is brought.  <u>Id.</u> at 15.

4      In the case at bar, plaintiff fails to demonstrate that

5  enforcing the forum selection clause would be unreasonable.

6  Plaintiff presents three arguments, which the court addresses in

7  turn.

8      **a.   Public Policy Concerns**

9      First, plaintiff argues that the forum selection clause

10  violates California's "anti-waiver" statute for securities fraud

11  actions.

12      Plaintiff asserts that "California has a strong public policy

13  against waiver of the right to bring actions for rescission or for

14  damages for securities fraud in a California court under California

15  Corporations Code Section 25701."  Pl.'s Opp'n at 8.  This section

16  of the California Corporations Code applies to offers to sell or

17  buy securities in California and provides that: "Any condition,

18  stipulation or provision purporting to bind any person acquiring

19  any security to waive compliance with any provision of this law or

20  any rule or order hereunder is void." Cal. Corp. Code § 25701.

21      Plaintiff, however, fails to explain how this provision

22  "declares" that enforcement of the forum selection clause would

23  violate California public policy.   <u>See</u> <u>Bremen</u> at 15.   The

24  provision, does not, specifically address waiver and venue.   In

25  <u>Jones v. GNC Franchising, Inc.</u>, the Ninth Circuit upheld the

26  district court's repudiation of the forum selection clause because

10

1  California law specifically provided that a "provision in a

2  franchise agreement restricting venue to a forum outside this state

3  is void. . ." 211 F.3d 495, 498 (9th Cir. 2000) (quoting Cal. Bus.

4  & Prof. Code § 20040.5).   The Ninth Circuit reasoned that

5  California Business and Professions Code § 20040.5 expresses a

6  strong public policy to protect California franchisees from the

7  expense, inconvenience, and possible prejudice of litigating in a

8  non-California venue. Id.   Given the absence of similar language,

9  California Corporations Code Section 25701 does not appear to

10  express a strong public policy regarding venue.   On this ground

11  alone, plaintiff fails to meet his "heavy burden" of showing that

12  the forum selection clause should not be enforced because it

13  contravenes strong public policy.   See Bremen.

14      Although there are no published cases which discuss Section

15  25701 specifically, its language mirrors the anti-waiver language

16  in the federal Securities Act of 1933 and the Securities Exchange

17  Act of 1934.[2]   Whether the anti-waiver provisions in the

18  Securities Acts invalidate forum selection clauses is an issue that

19  has been litigated extensively.

20      The Ninth Circuit's decision in Richard's v. Llyod's of London

21

22

23      [2]   The Securities Act of 1933 (the " '33 Act") provides
     that: "Any condition, stipulation, or provision binding any person
24   acquiring any security to waive compliance with any provision of
     this subchapter or of the rules and regulations of the Commission
25   shall be void." 15 U.S.C. § 77n.  The 1934 Securities Exchange Act
     (the " '34 Act") contains a substantially similar provision. 15
26   U.S.C. § 78cc(a).

1  is instructive.[3]   In <u>Richard's</u>, plaintiffs were United States

2  citizens and the defendant was the English insurance market, Lloyds

3  of London.   Plaintiffs signed a contract containing a forum

4  selection clauses designating British courts and choice of law

5  clauses designating English law.  Subsequently, plaintiffs sought

6  to invalidate the forum selection and choice of law provisions on

7  the grounds that they violated the strong public policies of United

8  States, as expressed in the anti-waiver provisions of the United

9  States Securities Acts of 1933 and 1934 as well as parallel state

10 securities law and RICO.

11     The Ninth Circuit rejected the contention and observed that

12 the anti-waiver provisions are worded very broadly, as they cover:

13 '"<u>any</u> condition, stipulation, or provision binding <u>any</u> person

14 acquiring <u>any</u> security to waive compliance with any provision of

15 this subchapter....'"  <u>Richards</u>, at 1293 (citing anti-waiver

16 provision, emphasis in original).  The court went on to observe

17 that "this language is broad enough to reach any offer or sale of

18 anything that could be alleged to be a security, no matter where

19 the transaction occurs."  <u>Id.</u>

20     The court rejected plaintiffs' argument that the anti-waiver

21

22       [3]  Though the <u>Richard's</u> case pertains to international
   contracts, it addresses the strength of the presumption of validity
23 that is accorded to forum clauses.  Indeed, many of the decisions
   regarding forum selection clauses pertain to international
24 contracts, yet the legal conclusions remain binding on this court.
   <u>See</u> <u>e.g.</u>, <u>Arqueta v. Banco Mexicano, S.A.</u>, 87 F.3d 320, 324-25 (9th
25 Cir.1996) (noting that the standard set forth in <u>Bremen</u> "has been
   widely applied to forum selection clauses in general" and not
   limited to the admiralty context).

26

1  provision constituted strong public policy and thus invalidated the

2  forum selection clause.   In rejecting plaintiffs' argument, the

3  court reasoned, "[t]his assertion, if true, expands the reach of

4  federal securities law to any and all such transactions, no matter

5  how remote from the United States." Id. at 1293.   The court went

6  on to agree with the Fifth Circuit that "we must tread cautiously

7  before expanding the operation of U.S. securities law in the

8  international arena." Id., citing Haynsworth v. The Corporation,

9  121 F.3d 956, 966 (5th Cir. 1997).

10       The case at bar does not pertain to international contracts.

11  Nonetheless, the logic applies with equal force in the domestic

12  setting.  In Richard's, the court ultimately held that the forum

13  selection clause did not contravene public policy.   In so holding,

14  the Ninth Circuit joined the majority of other circuits in finding

15  that forum selection clauses are valid despite anti-waiver

16  provisions.  See Haynsworth v. The Corporation, a/k/a Lloyd's of

17  London, 121 F.3d 956, 962 (5th Cir. 1997); Allen v. Lloyd's of

18  London, 94 F.3d 923, 928 (4th Cir. 1996); Shell v. R.W. Sturge,

19  Ltd., 55 F.3d 1227, 1229-30 (6th Cir. 1995); Bonny v. Society of

20  Lloyd's, 3 F.3d 156, 159 (7th Cir. 1993), cert. denied, 510 U.S.

21  1113, 114 S.Ct. 1057, 127 L.Ed.2d 378 (1994); Roby v. Corporation

22  of Lloyd's, 996 F.2d 1353, 1362-63 (2d Cir.); Riley v. Kingsley

23  Underwriting Agencies, Ltd., 969 F.2d 953, 957 (10th Cir.); Lipcon

24  v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1291 (11th Cir.

25  1998).

26       Together, these cases reflect a trend: "Federal courts have

13

1   . . . increasingly enforced private stipulations in securities

2   fraud litigation, despite the antiwaiver provisions of the federal

3   securities laws." Alan R. Palmiter, <u>Toward Disclosure Choice in</u>

4   <u>Securities Offerings</u>, 1999 Colum. Bus. L. Rev. 1, 74 (1999).  In

5   most of these cases, the courts' holdings rely on the proposition

6   that the forum provided for in the forum selection clause provides

7   remedies to the plaintiff.   <u>See</u>, <u>e.g.</u>, <u>Society of Lloyd's v.</u>

8   <u>Reinhart</u>, 402 F.3d 982 (10th Cir. 2005) (holding that the forum

9   selection clause naming English courts was enforceable because

10  there was no indication that English remedies were inadequate

11  substitutes for those of state securities act); <u>Haynsworth</u>, 121

12  F.3d at 969 (enforcing forum selection clause because "English law

13  provides a variety of protections for fraud and misrepresentations

14  in securities transactions.")

15      Florida law provides similar, if not identical, protections

16  for fraud and misrepresentation in securities transactions.

17  Plaintiff has failed to explain how the remedies he seeks under

18  California law are not available under Florida law, or how the

19  protections under California law are greater than under Florida

20  law. [4]

21      Concluding that the forum selection clause should be enforced

22  is consistent with the holdings of other district courts faced with

23  similar circumstances.  For example, in <u>Gagnon v. Ryerson, Inc.</u>,

24  _____

25      [4] Defendants provided the court with excerpts of the Florida
    statute.  In comparing the codes of the two states, it appears that
    the protections are the same and plaintiff has not argued to the
26  contrary.

14

1  the court rejected plaintiff's argument that Oregon public policy

2  regarding noncomplete agreements rendered a  forum selection clause

3  unenforceable.  The court noted that "plaintiff did not present any

4  evidence that Illinois law provides less protection than Oregon law

5  and, therefore, failed to prove that the Noncompete Clause would

6  be enforced any differently in Illinois." Gagnon v. Ryerson, Inc.,

7  No. 07-68-AS, Slip Op. at 4. (D. Or. Fed. 1, 2007).

8      The Gagnon court concluded that "[i]n the absence of any clear

9  showing that Plaintiff will be prejudiced by the litigation of this

10 matter in the Illinois courts, this court finds no reason not to

11 enforce the forum selection clause set forth in the Agreement."

12 Id., at 5.  See also E. & J. Gallo Winery v. Andina Licores S.A.,

13 440 F. Supp. 2d 1115 (E.D. Cal. 2006) (in rejecting plaintiff's

14 public policy argument, court reasoned "the [f]act that forum or

15 choice of law specified by contract affords remedies that are

16 different or less favorable to laws of forum preferred by plaintiff

17 is not alone valid basis to deny enforcement of forum selection and

18 choice of law provisions.")[5]

19     The court finds that the forum selection clause is reasonable

20

21     [5] Plaintiff cites to Nutracea v. Langley Park Investments
   PLC, 2007 WL 135699, 3 (E.D. Cal. 2007).  The Nutracea case,
22 however, is distinguishable.  In that case, plaintiffs were in
   California, defendants in England and the forum selection clause
23 provided that venue was in New York.  The court found it
   significant that neither of the parties had any relationship to New
24 York.  The same cannot be said of the case at bar.  Here, the
   defendants clearly have a relationship to Florida and plaintiff has
25 failed to demonstrate that Florida law does not provide the same
   protections.

26

1    in that enforcement of the clause would not "contravene a strong

2    public policy of the forum in which suit is brought, whether

3    declared by statute or by judicial decision." <u>Bremen</u>, at 15.

4        **b.    Inconvenience to Plaintiff**

5        Plaintiff also argues that he would be at a "distinct

6    disadvantage if he had to litigate in Florida."  Pl.'s Opp'n to

7    Def.'s Mot. to Dis. at 15.  Plaintiff maintains that he has no

8    contacts with Florida.  <u>Id.</u>  While undoubtedly true, plaintiff

9    fails to provide any evidence that litigating this case in Florida

10   "would be so difficult and inconvenient that the party would

11   effectively be denied a meaningful day in court." <u>Pelleport</u>, 741

12   F.2d at 281 (citing <u>Bremen</u>, 407 U.S. at 18).

13       Pursuing a lawsuit in another state is not per se

14   unreasonable. See <u>Carnival Cruise Lines</u>, 499 U.S. at 594; <u>see also</u>

15   <u>Fireman's Fund Insur. Co. v. M/V DSR Atlantic</u>, 131 F.3d 1336, 1338

16   (9th Cir. 1998) ("serious inconvenience" of litigating in Korea did

17   not render clause "unreasonable"); <u>Flake v. Medline Industries,</u>

18   <u>Inc.</u>, 882 F. Supp. 947, 949-950 (E.D. Cal. 1995) (J. Levi) (clause

19   requiring California plaintiff to litigate in Illinois upheld);

20   <u>Koresko v. RealNetworks</u>, Inc.  291 F. Supp. 2d 1157, 1158 (E.D.

21   Cal. 2003)(J. Wanger)(upholding clause requiring California

22   plaintiff to file suit in Washington state).

23       **c.    Allegation that Promissory Notes were Obtained Through**
         **Fraud**
24

25       Lastly, plaintiff argues that since the promissory notes were

26   obtained through fraud, they cannot be enforced and therefore, the

                                16

1   forum selection clauses cannot be enforced. <u>See</u> Pl.'s Opp'n at 9.
2   It is well established, however, that a party opposing the
3   enforcement of a forum selection clause must establish that the
4   forum selection clause itself (as opposed to the entire contract)
5   was obtained through fraud. <u>See</u> <u>Argueta</u>, 87 F.3d at 325 ("forum
6   selection clause is unreasonable if . . . its incorporation into
7   the contract was the result of fraud, undue influence, or
8   overweening bargaining power")(citing <u>Carnival Cruise Lines</u>, 499
9   U.S. at 591). Although plaintiff maintains that the promissory
10  notes were obtained through fraud, the complaint and plaintiff's
11  opposition fail to show that the inclusion of the forum selection
12  clauses themselves were the product of fraud. Again, plaintiff
13  fails to meet his burden of showing that the forum selection clause
14  should not be enforced.

15      In sum, plaintiff has failed to show that enforcing the forum
16  selection clause would be "unreasonable or unjust, or that the
17  clause [is] invalid for reasons such as fraud or overreaching."
18  <u>Manetti-Farrow</u>, 858 F.2d at 512. Accordingly, the court finds
19  that the forum selection clauses contained in the June and August
20  promissory notes are binding.

21  **B.    Transfer under 28 U.S.C. § 1406**

22      Section 1406(a) provides: "The district court of a district
23  in which is filed a case laying venue in the wrong division or
24  district shall dismiss, or if it be in the interest of justice,
25  transfer such a case to any district or division in which it could
26  have been brought." 28 U.S.C. § 1406(a).

1    Under §1406, this court may transfer the pending case to the

2   Southern District of Florida or dismiss the action altogether.

3   "Normally transfer will be in the interest of justice because

4   normally dismissal of an action that could have been brought

5   elsewhere is time-consuming and justice-defeating." _Miller v._

6   _Hambrick_, 905 F.2d 259, 262 (9th Cir. 1990) (addressing transfer

7   under 28 U.S.C. § 1631). Here, plaintiff states in his opposition

8   brief that he would prefer the action be transferred, not

9   dismissed.   Given plaintiff's preference, transfer is in the

10  interest of justice in this case.

11                              **V.**

12                          **Conclusion**

13  1.   Defendants' Motion to Transfer is GRANTED.

14  2.   The case is ordered TRANSFERRED to the Southern District of

15       Florida.

16       IT IS SO ORDERED.

17       DATED: February 28, 2007.

18

19

20       LAWRENCE K. KARLTON
         SENIOR JUDGE
21       UNITED STATES DISTRICT COURT

22

23

24

25

26

18